IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JAMES THOMAS POWELL** <br> 52 Channing Street, N.W. <br> Washington, D.C. 20001 <br> <br> Plaintiff <br> <br> vs. <br> <br> **PRINCE GEORGE'S COUNTY, MARYLAND** <br> A Body Corporate and Politic <br> 1301 McCormick Drive <br> Suite 4100 <br> Upper Marlboro, Maryland 20774 <br> <br> **OFFICER ERNEST HAYLOCK, #3289** <br> Prince George's County Police Department <br> District 4 Station <br> 5135 Indian Head Highway <br> Oxon Hill, Maryland 20745 <br> <br> Defendants | Civil No.: 8:18-cv-3683 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

**Count One – Seizure without Probable Cause, Fourth Amendment Violation, Sec. 42 U.S.C. Sec. 1983**

James Thomas Powell, plaintiff, by counsel, alleges:

1. In this case, the plaintiff's Fourth Amendment right against unreasonable seizure was violated when he was arrested and prosecuted under a dishonest arrest warrant lacking probable cause.

2. Plaintiff, James Thomas Powell, is a resident of the District of Columbia, and of full age.

3. Officer Ernest Haylock was a duly appointed and acting police officer of the Prince George's County Police Department. At all times, his actions described in this complaint were under color of law.

4. Prince George's County, Maryland is a body corporate and politic under Maryland law and was the employer of Detective Haylock.

5. Subject matter jurisdiction of this Court is on 28 U.S.C. Sec. 1331 (federal question) and Sec. 1332 (diversity of citizenship).

6. In 2004, Claude Jackson, Jr. and Antonail Adams purchased a single-family home located at 3710 Hill Park Drive in Temple Hills, Maryland (hereafter referred to as the "Hill Park Drive property" or "the property"). Jackson and Adams financed the purchase of the property through a mortgage with a bank.

7. Jackson and Adams defaulted on their mortgage and the mortgage holder foreclosed on the property. In May 2015, the mortgage holder's trustees sold the property at auction to US Bank National Association as Legal Trustee for Truman 2013 SC3 Title Trust (hereafter "US Bank" or sometimes "the owner of the property").

8. On May 26, 2015, US Bank, through an affiliate, assigned management of the property to plaintiff.  Under the assignment, Plaintiff had a duty to maintain, repair, inspect and preserve the property, and market it for sale.

9. On September 27, 2016, the Circuit Court for Prince George's County issued an Order ratifying the foreclosure sale of the property to US Bank.  On January 4, 2017, the mortgage holder's trustees conveyed title to US Bank.

10. In December 2016, Antonail Adams still occupied the property.  Plaintiff negotiated with her to vacate the property in exchange for a payment of cash.  She vacated the property in January 2017.

11. On December 4, 2017, went to the Hill Park Drive property to inspect for possible water leaks on the property. He loudly knocked several times on the front door.  No one

responded. He discovered that the locks on the house had been changed and a sheet had been put over a basement window. He called the police to report a trespassing. While waiting for the police, plaintiff went to the rear of the house. He noticed a kitchen-size refrigerator on the patio deck. Concerned that the property may be sustained water damage, he broke the glass door at the patio and entered the house, announcing his presence. He saw evidence of the presence of squatters. He smelled the odor of marijuana. He found a toilet flap stuck open and shut the water off. He searched the kitchen drawers and found mail addressed to an unknown person at the Hill Park Drive address. He also found a copy of the original deed in the names of Claude Jackson, Jr. and Antonail Adams. He seized those documents as evidence. He attempted to enter the basement, but he could not open the door to it. The police arrived, and he went outside and met them.

12. Plaintiff explained that he was the property manager and that someone had broken in and was squatting in the home. The officers went inside and searched. They did not find anyone. The officers advised plaintiff that he could return the next day with his papers showing his authority and that if the persons occupying the house were inside, he could call the police and they could try to resolve the situation. The officers stayed until the plaintiff completed his inspection of the basement and then they all left.

13. At no time did plaintiff damage any items of personal property in the house, steal anything, or lie to the officers about what happened.

14. Later on December 4, 2017, at approximately 7:00 p.m., a woman named Crystal Nelson reported to the police that *their* home at 3710 Hill Park Drive had been broken into. The police responded. Nelson and her husband, James Hollins, had placed a security camera in the

living room. She told the police that she had footage of the break-in and identified plaintiff as the person who broke in.

15. Nelson said that she could not produce a copy of the lease because the plaintiff had taken it. However, Nelson had no lease with the title owner, US Bank, and they had no lawful claim to possession of the Hill Park Drive property.

16. Plaintiff returned to the Hill Park Drive property on December 5, 2017. There was no one in the house. He waited an hour for someone to arrive, and then left his card on the door and left.

17. On December 6, 2017, plaintiff received a call from Nelson. She said that she and her husband were on their way to meet with Detective Haylock to take out charges against him for breaking into their home and for breaking their friends' cellphone. She also said that she had been working with the police to apprehend the former owner of the property who leased the property to them. Plaintiff explained that he was the property manager and that the owner of the property never leased the property to her. He tried to mediate by offering Nelson money for relocation assistance, i.e., "cash for keys." She indicated that she was going to speak with the detective and that she would call plaintiff after doing so.

18. Concerned about the Nelson's' threatened burglary complaint, plaintiff promptly retained an attorney, Carlos Salvado, Esq. The attorney immediately called Detective Haylock, but he could not reach him, and Salvado left a message. When the detective did not return the attorney's call, plaintiff called him directly. Detective Haylock took the call. He asked the plaintiff: "Why do you need and attorney, what did you do?" Plaintiff explained that he thought a crime was being committed by the squatters. The detective asked the plaintiff for his date of birth and work address and where he could come to speak with the plaintiff. He asked the plaintiff to

identify the organization he managed the property for, and plaintiff provided all of the contact information for persons who could verify ownership and plaintiff's authority. Plaintiff told the detective that he would be speaking to his attorney to further discuss the details.

19. Later in the evening of December 6, 2017, plaintiff spoke with James Hollins, who identified himself as Ms. Nelson's husband. A "cash for keys" arrangement was discussed. Hollins wanted to meet plaintiff personally to resolve the matter. Plaintiff explained that he wanted to speak with the detective first before making any decision. Hollins stated that Detective Haylock said that he was going "to lock up" the plaintiff.

20. After learning that Detective Haylock was avoiding his attorney's calls, the plaintiff called Detective Haylock, who took the call. This was on the evening of December 6th. He told the detective about his conversation with Hollins and he asked if money for relocation assistance was an option. Detective Haylock replied: "I'll decide." Plaintiff set up a meeting for December 11th at 10:00 a.m. However, he informed the detective that he was not sure of his attorney's availability.

21. On December 11th, the attorney sent a fax at 10:10 a.m. to Detective Haylock, indicating that he could not attend. He requested the detective to contact him and left his contact information.

22. When he did not hear from Detective Haylock, plaintiff's attorney repeatedly attempted to reach the detective, but he refused to communicate with him.

23. Attorneys for the owner of the property sent Nelson and Hollins a written inquiry form concerning their occupancy of the property. On February 21, 2018, Nelson and Holmes responded. They indicated that they leased the property and provided a copy of a lease. The document purported to be a lease of the Hill Park Drive property in the names of Nelson and

Hollins as tenants and "Antonail Adams" as the lessor. It was dated October 17, 2017. In fact, the lessor's signature was forged, and Hollins and Nelson created the document to justify its possession of the Hill Park Drive property.

24. A reasonable investigation would have revealed with little difficulty that Nelson and Hollins had occupied the Hill Park Drive property under false pretenses.

25. On March 6, 2018, US Bank filed a Complaint for Wrongful Detainer in the District Court of Maryland against Hollins and Nelson. The complaint alleged Nelson and Hollins were not entitled to possession of the property and requested its ownership of the property be restored. Service of process on Hollins and Nelson was made the same day.

26. On March 8, 2018, Detective Haylock called attorney Salvado. It was nearly three months after Salvado had left messages for the detective to call him. Haylock was short and threatened to get a warrant for plaintiff. Believing it was futile to discuss the case substantively with the detective, he asked the detective to notify him when he got the warrant so that he could voluntarily turn his client in. The attorney also wrote the detective to confirm that he would notify him when the arrest warrant was issued. He offered to cooperate and "discuss any aspect of your investigation." Detective Haylock did not respond to the letter.

27. On March 30, 2018, a judge of the District Court of Maryland for Prince George's County conducted hearing on US Bank's complaint for wrongful detainer. The court granted possession of the property to US Bank against Nelson and Hollins.

28. Detective Haylock learned about the eviction and took immediate action. At 5:53 p.m., on March 30, 2018, he presented his sworn affidavit in support of an arrest warrant and statement of charges against the plaintiff.

29.     Detective Haylock's affidavit alleged that on December 4, 2017, the plaintiff "did break and enter into the victim['s] (Nelson, Crystal) *place of residence,*" at 3170 Hill Park Drive, Temple Hills, Maryland.  It further stated that the detective's investigation revealed that Ms. Nelson was "scammed" by the original homeowner and that she "did not know that the residence was a foreclosed home at the time that she rented the home."

30.     The detective's affidavit acknowledged that plaintiff was the property manager for the Hill Park Drive property, that it was a foreclosed property, and that it was supposed to be vacant.  The affidavit further stated plaintiff came to the property to do renovations and found the locks had been changed.  The affidavit stated that plaintiff reported to the police that "an unknown suspect broke into the residence and currently is squatting inside."

31.     Detective Haylock's affidavit further stated that Nelson had a camera in the home and that camera footage showed that plaintiff used a metal object to break the patio glass door and enter the property. She stated further that plaintiff broke her 46-inch LG television, an iPhone 6, an LG Android phone, and several pictures on the wall, and that the camera "captured the defendant breaking the above-mentioned items" and removing her "lease" from the kitchen drawer. The affidavit stated that "[t]his investigator personally viewed the video and confirmed the events of the burglary."

32.     At approximately 6:10 p.m. on March 30, 2018, a Commissioner signed a Statement of Charges and arrest warrant for the plaintiff. The Statement of Charges alleged the following crimes were committed by plaintiff: first degree burglary in violation of Md. Code, Crim. Law Art. Sec. 6-202 (a)(breaking with intent to commit theft); third degree burglary, Crim. Law Art. Sec. 6-204 (breaking with intent to commit malicious destruction); fourth degree burglary, Crim. Law Art., Sec. 6-205 (a) (breaking into dwelling); malicious destruction of items

of personal property, Crim. Law Art., Sec. 6-301; and theft of a document, i.e., a lease, in violation of Crim. Law Art., Sec. 7-104 (g)(3).

33. Detective Haylock did not notify plaintiff's attorney of the issuance of an arrest warrant for his client.

34. On June 9, 2018, plaintiff was arrested on the warrant at the airport in Charlotte, North Carolina upon his return to the United States from an overseas trip. He was jailed as a fugitive and a bond of $75,000 was set. He spent a night in jail. At considerable expense, he hired a lawyer and posted a bond to secure his release. He drove to Prince George's County and presented himself to a Commissioner on June 14, 2018. He spent several hours in custody. Bond was set at $15,000 and he was ordered not to return to the Hill Park Drive property. He incurred additional expense to hire an attorney to defend him on the charges.

35. Eventually, on September 26, 2018, all of the charges were dropped.

36. Detective Haylock's application for arrest warrant and statement of charges was dishonest and lacked probable cause, to wit:

   a. The affidavit stated that the plaintiff "did break and enter into the victim['s] (Nelson, Crystal) place of residence" at 3170 Hill Park Drive. The statement was intentionally false. From the public land records, the detective knew that US Bank was the title owner of the property. He knew as well – or at least did not question—that plaintiff was the owner's authorized agent for the management of the property. Finally, he knew that US Bank did not lease or other grant permission to Nelson and Hollins to possess the Hill Park Drive property. The detective is bound to know the law, and Maryland law is that a titleholder can lawfully make a peaceable forcible entry to its own property to reclaim possession

    against an unlawful possessor. Unless the affidavit could establish that US Bank did not own the property, probable cause did not exist to believe that its agent, i.e., plaintiff, unlawfully broke and entered the property at Hill Park Drive

b. The detective's belief that Nelson reportedly leased the property from the former homeowner was irrelevant because the former owner had no legal authority to lease the property. The detective stated that Nelson's lease was most likely fraudulent. But he added that he "was not able to confirm it because it was stolen by the defendant." This last sentence is false and disingenuous. The detective knew that he never tried to locate and speak to Ms. Antonail Jackson. She has lived in the Washington, D.C. area, and Detective Haylock had the resources to locate her with little difficulty. If he had, he would have found that Ms. Jackson would deny that she leased the property to Nelson or Hollins, and further, she would deny that her signature appears on the lease which Nelson furnished to US Bank's lawyers in February 2018.

c. Detective Haylock's statement that "[t]hroughout the course of this investigation it was revealed that the defendant was not truthful and that he was the person who actually broke into the home" is false and misleading, for three reasons: 1) Detective Haylock consistently refused to speak with plaintiff's attorney throughout the entire process, and never requested a formal statement from plaintiff. 2) Plaintiff was indeed truthful in that he identified the owner of the property and disclosed his status as the owner's property manager – facts which go to the heart of whether plaintiff committed an unlawful breaking. 3) On December 4th when plaintiff reported the incident to the police, he did not

mispresent who broke the glass door, as the detective's affidavit suggested. What plaintiff reported to the officer on the scene was that "unknown suspect broke into the residence *and* is currently squatting inside." The detective is misinterpreting what plaintiff told the officer on scene. Plaintiff was not referring to the person who broke the glass door as the unknown suspect because it was unlikely that squatters who had already changed the locks on the house would again break doors to enter the property.

37. Setting to one side the fact that the warrant affidavit is dishonest, the affidavit in no way calls into question plaintiff's legitimate status as the property manager of the property and the owner's right to make a forcible entry of the property to reclaim possession from an illegal possessor. Based upon the allegations in the affidavit itself, a police officer could not reasonably believe that the affidavit stated probable cause to believe that plaintiff had committed a burglary or any other offense of unlawful breaking and entering.

38. With regard to the charges of malicious destruction, Detective Haylock's affidavit was intentionally untruthful or was made with reckless disregard for the truth. He stated that the camera footage from Nelson's security camera footage "captured" the plaintiff destroying items of personal property. To the contrary, it did not. The footage in no way shows plaintiff ransacking the house or destroying any items of personal property. Instead, it shows plaintiff acting normally, like a property manager is likely to act in discovering squatters have moved in. Plaintiff is seen checking drawers and doors, looking at documents, going upstairs, and generally looking around. There is no footage showing him breaking items of personal property. If plaintiff had done so, the camera footage would have shown it. If one disregards the false

statement, there is no probable cause to believe that he committed the offense of malicious destruction of property.  If anything, the footage establishes plaintiff's innocence of the crime.

39. As to the allegations of theft, Detective Haylock's affidavit is quite consistent with plaintiff exercising a claim of right to seize the alleged evidence as evidence.  It was relevant to identify the squatters and to contradict any claim that they were in possession of the property lawfully.  A claim of right to property negates a theft.  And if the detective had conducted even a minimal investigation, he would have determined that the lease was fictitious and did not exist.  There is no probable cause that a person stole a document which does not exist.

40. Detective Haylock acted with an improper motive, and intentionally violated plaintiff's Fourth Amendment rights, or was recklessly indifferent to plaintiff's legal rights. He got the arrest warrant without probable cause in order to retaliate for evicting Nelson and Hollins from the property. He treated plaintiff with hostility, and he callously refused to speak with his attorney or give notice of the warrant. He falsely portrayed Nelson as "unsuspecting victim" when he had ample evidence that she broke into the house and that she and Hollins were in the process of stealing a refrigerator from the house.  He failed to charge Nelson and Hollins with these criminal acts.  He knew that they were the real criminals in this whole affair, not plaintiff.

41. As a proximate result of the Defendant Haylock's violation of the plaintiff's rights under the Fourth Amendment, plaintiff was arrested and jailed and put to considerable expense for lawyers and bondsman.  He was embarrassed and humiliated, suffered annoyance and anxiety and inconvenience, lost his time from work and other pursuits, suffered injury to his reputation, and lost income.

**Count Two – Malicious Prosecution under Maryland Law**

Plaintiff incorporates by reference all previous allegations in paragraphs 1-41.

42. As previously alleged, Detective Haylock initiated criminal process against the plaintiff without probable cause.

43. All charges were terminated in plaintiff's favor with either dismissal or nolle pros.

44. Detective Haylock acted with malice. Not only were the charges unsupported by probable cause, but the officer also filed the charges to retaliate against him, as previously alleged.

45. Plaintiff suffered damage and harm as previously alleged.

46. Plaintiff has substantially complied with the notice provision of the Local Government Tort Claims Act.

**Count Three – Maryland Constitutional Claim – Seizure without Probable Cause**

Plaintiff incorporates by reference allegations of paragraphs 1-46.

47. Article 26 of the Maryland Declaration of Rights provides legal rights on an equal footing with the Fourth Amendment to the United States Constitution.

48. Detective Haylock's unlawful arrest warrant and initiation of process without probable cause violated the plaintiff's rights under Article 26, resulting in harm and injury as previously alleged.

49. Detective Haylock committed the constitutional violation acting within the scope of his employment for the County.

**Count Four – Abuse of Process – Maryland Constitution, Art. 26**

Plaintiff incorporates the allegations of paragraphs 1-49.

50.     Detective Haylock purposely and maliciously sought an arrest warrant and criminal prosecution against the plaintiff in order to retaliate against him for pursuing an eviction action he filed against Nelson and Hollins. He sought and obtained a warrant for plaintiff's arrest, not to bring a law violator to justice, but rather to punish the plaintiff. He vowed to lock plaintiff up, regardless of the evidence. The abusive use of process to arrest and prosecute a person for retaliatory purposes violates the Fourth Amendment.

51.     As a proximate and direct result of such abuse of process, plaintiff suffered injury and harm as previously alleged.

**Count 5 – Malicious Abuse of Process**

Plaintiff incorporates the allegations of paragraphs 1-51.

52.     Detective Haylock's abusive use of process to retaliate against plaintiff for legally protected actively is actionable under Maryland common law as an abuse of process which resulted in harm and damage, as previously alleged.

53.     Detective Haylock's actions were malicious and intentionally aimed at causing plaintiff harm and injury.

**Ad Damnum Clause**

Plaintiff demands:

1.      Judgment on all counts against Detective Haylock for compensatory damages of $800,000 and punitive damages of the same amount.

2.      Judgment for compensatory damages against Prince George's County under Counts Three and Four in the amount of $400,000.

3.      An award of attorney's fees and costs under Counts One and Four against Defendant Haylock.

4. Such further relief as may be required.

*[signature]*
Terrell N. Roberts, III
ROBERTS & WOOD
*Attorney for Plaintiff*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
troberts@robertsandwood.com

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

*[signature]*
Terrell N. Roberts, III